JANVIER, Judge.
On January 26, 1956, Mrs. Leah Barr, wife of Edward J. Barr, sustained physical injuries when the automobile which she was operating was struck from the rear by a large trailer tractor owned by Royal Equipment Company, Inc., and which at the *132 time was being operated by George C. Liston, an employee who admittedly was acting within the course and scope of his employment. The said Royal Equipment Company had secured,a policy of liability and property damage insurance from Hardware Mutual Casualty Company and Mrs. Barr and her husband brought this suit against Royal Equipment Company, Inc., George C. Liston, and Hardware Mutual Casualty Company, she, seeking reimbursement for the damages sustained by her for her physical injuries and suffering, and he, for the hospital, medical and other expenses necessitated by the injuries to Mrs. Barr.
Plaintiffs prayed for solidary judgment against all defendants, Mrs. Barr seeking recovery for $50,000 and Mr. Barr praying for judgment for $2,460.31.
Though it was at first denied that Liston was in any way at fault, during the trial below it was conceded that the car which Mrs. Barr was operating was standing stationary, waiting for the traffic light to turn from red to green, and that it was struck in the rear by the trailer truck of Royal Equipment Company, Inc., while it was so standing stationary, and that consequently there was liability in all three defendants for such injuries as Mrs. Barr may have sustained and for the expenses actually necessitated by those injuries.
After a lengthy trial, consisting largely of the testimony of medical experts, there was judgment in the 24th Judicial District Court for the Parish of Jefferson in favor of Mrs. Barr against all three defendants, in the sum of $1,250, and in favor of Mr. Barr against the said defendants in the sum of $248.51. Both plaintiffs have appealed, contending that the respective amounts are inadequate. The defendants have neither appealed nor answered the appeals of plaintiffs.
It is contended on behalf of plaintiffs that Mrs. Barr sustained a severe whiplash injury to her back and neck; that she sustained a deviated septum of the nose, and that, because of her pregnancy at the time, her injuries were much more serious than they would otherwise have been, and that she was made extremely nervous and apprehensive over the possibility of injury to the unborn child, and, being of a nervous disposition, was subject to frequent crying spells for many months following the accident.
Defendants, on the other hand, assert that the injuries of Mrs. Barr were not particularly serious, that she has entirely recovered, that, in due course, the expected child was in no way injured and was born normally and in perfect condition.
The reasons given by the District Judge for the rather small awards are brief and read as follows:
“This is a suit by husband and wife against another individual operating a vehicle, his employer, and its insurer for personal injuries to the wife and damages to the husband.
“The parties stipulated as to the collision, the question here being the amount of injuries and damages suffered as a result thereof. The Court is of the opinion that the injuries suffered by the wife were of a relatively minor nature and not the severe injuries of which she complains. The Court finds as a fact that there is no residual disability resulting from the injuries sustained. The Court finds that the injuries suffered were contusions of the nose, forehead and chest. There was some injury to her back and neck by virtue of a whiplash type strain. The accident occurred while the wife was pregnant, and this caused her to undergo considerable nervous strain and fears that she would lose her child. After considering the report of the doctors, together with the lay evidence presented, the Court is of the opinion that these injuries were not of long duration, and offered no particular complications to the pregnancy, and as stated above, there are *133 no residual effects. The Court fixes the following amounts for her injuries:
For injuries suffered. $ 500.00
For pain, suffering, and anxiety during pregnancy- 750.00
Total. $1,250.00
“The husband, as head and master of the community, suffered the following damages for which he is entitled to recover:
Medical Expense:
Dr. Bradburn . 55.00
Back support . 19.01
Dr. Teitelbaum . 62.50
Dr. Brown. 17.00
Dr. Soboloff. 25.00
Dr. Teitelbaum . 35.00
Miscellaneous medicines and transportation. 35.00
Total ... $248.51
“The Court disallows the other medical bills, feeling that they are a result of the pregnancy or of the kidney disorder, which are not attributable to this accident.”
Strangely enough, while the defendants are completely satisfied with the testimony given by the physician who took the stand as a witness for plaintiffs and who was the attending physician who treated Mrs. Barr, after the accident, and who had been treating her previously and had charge of her pregnancy, the plaintiffs are obviously not satisfied with the testimony of this physician and apparently believed that Mrs. Barr had sustained injuries much more serious and much more lasting than this physician, Dr. William Plummer Brad-burn, seems to think that they were. Dr. Bradburn said that he felt certain that “there was no primary orthopedic injury,” and in his report of December 18, 1956, which he made to counsel for plaintiffs, Dr. Bradburn stated that he had caused Mrs. Barr to be examined by Dr. H. R. Soboloff and that, “after a thorough examination and more X-rays which were taken at Dr. M. D. Teitelbaum’s it is his opinion (Dr. Soboloff) that the patient has no residuals of the injury on an orthopedic basis”, and Dr. Bradburn added: “With this I concur.”
In an effort to overcome the effect of the testimony of Dr. Bradburn and the reports of other medical experts, Mr. and Mrs. Barr, on the day before the trial began, called in another expert who examined Mrs. Barr and who, after an examination on that day, reached the conclusion that she had been severely injured and was still in a serious condition at the time of the trial.
Although this orthopedic expert had been called in on a previous occasion when Mrs. Barr, in 1954, had sustained an injury quite similar to that which is involved here, and, as a result of which, she had been able to obtain a compromise settlement for $1,000, this expert was not called in by Mrs. Barr when she was in this accident on which this suit is based, but was consulted only the day previous to trial in an obvious effort to overcome the effect of the testimony which plaintiffs seemed to anticipate from their regular physician, Dr. Bradburn. When this orthopedic expert testified, he described the injuries which Mrs. Barr had sustained and, on cross-examination, was questioned about his report on Mrs. Barr’s condition after the accident in 1954. While he endeavored to demonstrate that the injuries which he says Mrs. Barr suffered in 1954 were not identical with those which he says she sustained in this accident, we have attempted to understand and to analyze the rather involved and lengthy medical words and terms and are unable to find any substantial difference between the findings made in 1954 and those found by this same expert in this case. We do not mean to say that Mrs. Barr’s condition after this accident was caused by the earlier accident, but we do find it strange that this same doctor, who treated her for similar injuries in 1954, was not consulted at this time until the eleventh hour.
*134 We have found it difficult to accord complete credibility to the testimony of Mrs. Barr herself. It is shown that, on the previous occasion to which we have referred, she sustained a similar “whiplash” injury and had obtained a compromise settlement. It is also shown that on still another occasion, in 1951, she had made a compensation claim far injuries and had received a small settlement. The strange thing about this claim for compensation is that it seems to have been necessary to employ a private detective, who ascertained that she was not nearly so badly hurt as she claimed, and that although, when first questioned about this claim which was made in 1951, she said that it had taken place “so long ago” that she could remember nothing about it, a little later she seemed to have regained a recollection of it and admitted the amount which she had received in settlement and also remembered that it had been a claim for compensation.
We note that, though at first it was claimed that Mrs. Barr sustained other internal injuries as a result of the accident on which this suit is based, practically all of the other claims have been eliminated and the only injuries about which there remains any need for discussion are the whiplash injury, a possible deviated septum of the nose, and the anxiety which was based on the pregnancy.
There is no positive proof that she sustained a deviated septum of the nose as a result of this particular accident. As a matter of fact she claims that this injury was sustained when she was thrown forward and her nose struck the steering wheel of the car. We do not need the advice of an expert in physics to reach the conclusion that, if she was sitting in a stationary car which was struck a heavy blow directly from the rear, she would not have been thrown forward into the steering wheel. Her head would have been “whip-lashed” backwards into the direction from which the force was exerted.
We well realize that when such an accident occurs strange results may ensue, but we do not believe that she was thrown forward into the steering wheel as a result of the blow from the rear.
In an effort to prove that Mrs. Barr had sustained a deviated septum as a result of the accident, plaintiffs produced the testimony of Dr. C. L. Brown, admittedly an expert in the treatment of diseases of the nose and throat. Dr. Brown, however, was by no means certain that the deviated septum which he found after the accident had been caused by it. When he was asked what he thought was the cause of the deviated septum, he said: “ * * * in all probability, from trauma of some type or she was born that way.” He was asked whether he had examined her previous to the accident and he said that at that previous examination “she had not complained of it particularly.” He was asked whether, in his notes, he had made any reference to the deviated septum and he answered: “I haven’t got it written down here. Evidently she may have had some deviation.” Dr. Casey, who first treated Mrs. Barr for the injury to her nose, was not produced as a witness.
Surely this record does not show with reasonable certainty that this condition resulted from the accident.
We also note that, although it was alleged that Mrs. Barr’s pregnant condition “had been complicated * * * with a kidney infection involvement,” it was later stipulated that Dr. Tomskey, who treated her for this kidney condition, if placed on the stand, would testify that that condition was not due to the accident.
We conclude from all of the medical testimony that, while she did sustain some injury which for a time may have caused pain and though she was no doubt apprehensive concerning her pregnancy, her injuries were not particularly serious, and we conclude that the amount awarded her was adequate under the circumstances. Awards in such cases cannot be accurate to the penny, and we should not substitute *135 our appreciation of the seriousness of the injuries for that of the District Judge who saw Mrs. Barr and heard the testimony of the doctors.
We have endeavored to determine just what share of the expenses borne by Mr. Barr should be attributed to this accident and what share should be said to have been caused by the pregnancy and by the previous condition of Mrs. Barr herself. Here again we feel that we must accept as correct the estimate of the District Judge.
The judgment appealed from is affirmed at the cost of appellants.
Affirmed.